**DEMETRIOS K. STRATIS, ESQ.**
**RUTA, SOULIOS & STRATIS, LLP**
10-04 River Road
Fair Lawn, New Jersey 07410
(201) 794-6200/ (201) 794-6300 Fax
Email: dstratis@stratislaw.com
Atty Id: 023391991
Attorney for Plaintiff Jenye Viki Knox

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENYE VIKI KNOX | CASE NO. |
| Plaintiff, | |
| v. | **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND COMPENSATORY AND PUNITIVE DAMAGES** |
| UNION TOWNSHIP BOARD OF EDUCATION; DR. PATRICK MARTIN, Superintendent of Union Township Board of Education; JAMES DAMATO, Union Township Board of Education Secretary; EDWARD GIBBONS, Union High School Principal; John Does 1-5 (such names being fictitious) | |
| Defendants. | |

Plaintiff Jenye Viki Knox who resides at 1227 Brookside Avenue, Union, New Jersey 07083 by and through counsel file this civil action to respectfully request this Court to issue Injunctive and Declaratory Relief and award Damages for constitutional violations and other causes of action described below. In

support, Plaintiff avers unto the Court as follows:

## **INTRODUCTION**

1. This is an action seeking redress for denial of due process, discrimination based on religion, discrimination based on race, and termination of employment in contravention of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e *et seq.*, 42 U.S.C.A. § 1983, the First and Fourteenth Amendments to the Constitution of the United States, and in breach of contract. This action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, 42 U.S.C. §1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e et seq.

2. Plaintiff, a citizen of the United States who resides at 1227 Brookside Avenue, Union, New Jersey 07083, seeks equitable and monetary relief for Defendants' unlawful actions, including back pay, front pay, reinstatement of tenure, compensation for emotional pain and suffering, reimbursement of costs, attorney fees, and all other relief to which she is entitled by law. Defendants, who are located at 2369 Morris Avenue, Union, NJ 07083, subjected Plaintiff to unlawful pre-discipline actions regarding Plaintiff's tenure, and in doing so denied Plaintiff due process. The unlawful pre-discipline actions were also discriminatory and amount to a wrongful termination. Said actions were

initiated because Plaintiff expressed her religious viewpoint on a matter of public concern and because of Plaintiff's race, and were initiated with the specific intention of forcing Plaintiff to resign, which Plaintiff did. The actions, then, constitute a denial of due process regarding Plaintiff's tenured position, discrimination against Plaintiff on the basis of religion and race, and an unlawful termination of Plaintiff's job.

## JURISDICTION AND VENUE

3. This action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, 42 U.S.C. §1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e et seq.

4. This Court has original jurisdiction over the federal claims by operation of 28 U.S.C. §§ 1331 and 1343. This court has supplemental jurisdiction under 28 U.S.C. § 1367.

5. This Court has authority to grant the requested injunctive relief under 28 U.S.C. § 1343; the requested declaratory relief under 28 U.S.C. §§ 2201-02; the requested damages under 28 U.S.C. § 1343; and costs and attorneys fees under 42 U.S.C. § 1988(b).

6. Venue is proper in the Federal District Court for the District of New Jersey under 28 U.S.C. § 1391(b), because a substantial part of the actions or

omissions giving rise to this case occurred within the District of New Jersey.

## **IDENTIFICATION OF THE PARTIES**

7. Plaintiff Jenye Viki Knox (hereinafter "Viki" or Plaintiff) is and was at all times relevant herein, a resident Union, New Jersey, who was forced to resign from her position at Union Township High School because of the Defendant's discriminatory actions.

8. Defendant Union Township Board of Education (hereinafter "the Board") is a public entity established, organized, and authorized under and pursuant to the laws of New Jersey, with authority to sue and be sued in its own name.

9. The Board is charged with the development, adoption, implementation, and enforcement of school district policies, including the Policy and practice challenged herein of prohibiting religious speech or free speech. The Board is also charged with the administration, operation, and supervision of Union Township High School and its employees.

10. The Defendant Board is responsible for the actions of its employees, including Defendants Martin, Gibbons and Damato. The Defendant Board acquiesces in and supports the actions stated herein of Defendants Martin, Gibbons and Damato, which actions have been engaged in pursuant to the Board's Policy and practice challenged herein.

11. Defendant Dr. Patrick Martin is Superintendent of Union Township School District and, among other things, Dr. Martin is responsible for administering the Board's policies, including the Policy and practices challenged herein, pursuant to state and federal laws, as they relate to teacher activities and expression on and off campus. Dr. Martin is responsible for implementing the Policy and practice of prohibiting religious speech.

12. Defendant Edward Gibbons is and was at all times relevant to this Complaint Principal of Union Township High School. Defendant Gibbons is charged with the responsibility of administering the School and its policies, including but not limited to overseeing the activities of teachers and student clubs.

13. Defendant James Damato is and was at all times the Board of Education Attorney. Defendant Damato is charged with the responsibility of administering the School and its policies, including but not limited to overseeing the activities of teachers and student clubs.

## STATEMENT OF FACTS

### VIKI'S TENURE

14. Viki Knox has been employed as a special education teacher with the Board since January 1, 2000.

15. She achieved tenure as a special education teacher in the Union Township

School District on or about January 2, 2003.

16. Viki has always been a teacher in good standing with the Union Township School District, and has received "only glowing and superlative observations and evaluations."

## DEFENDANTS' DISCRIMINATE AGAINST VIKI'S RELIGIOUS SPEECH

17. During the last week of September 2011, Viki posted a public Facebook "post" noting that a billboard at Union High School promoting alternative lifestyles was contrary to her private religious beliefs.  Viki did not make any of the "posts" herein mentioned during school hours and did not use school equipment.  Viki made all posts herein mentioned while at home during evening hours or on weekend.

18. When others attacked her post on Facebook, Viki responded by explaining her religious objections in greater detail.  Viki's posts included the expression of her sincerely held religious beliefs including what the Holy Bible states about homosexuality.  In her posts, she describes homosexuality as a sin and disobedience to God and further describes the message of salvation through Jesus Christ.  In the same Facebook "conversation," Viki was also the target of many racist comments.  Viki is an African American.

19. For several years preceding this post, Viki was the academic advisor for The

Seekers Club which is a Christian based Bible Study club which meets after school. She was also the advisor for the Union High School Gospel Choir for three years. Viki was also an ordained minister. All of the Defendants named herein as well as other staff, faculty and students knew that Viki was the academic advisor for The Seekers Club and the Gospel Choir, and that she was an ordained minister.

20. Upon information and belief, Defendants became aware of the Facebook conversations and on or about October 11, 2011, Viki was removed from her classroom publicly without any advance notice in front of her students and in front of other teachers during school hours. She was then escorted to a small room where Defendant James Damato, Board Attorney, Mr. Greg Tatum, Assistant Superintendent, and Mr. Jim Gross, Vice President of UTEA were waiting for her.

21. These individuals interrogated Viki about her Facebook posts and conversation. Viki was then pressured by these individuals to say that her religious beliefs were wrong, and felt extremely intimidated by them. While speaking critically of Viki's religious beliefs and her freedom of expression, at no point did any of these individuals express their objection to the racist comments and threats that had been made against Viki in the same Facebook posts. Rather they had the same objective as those who made the racist comments: to silence Viki's

religious views on a matter of public concern.

22. In agreeing with their purpose and not expressing regret or disapproval over the comments leveled at Viki, the individuals who interrogated Viki tacitly approved the racism she was subject to.

23. On or about October 13, 2011, Viki was again publicly removed from her classroom during school hours in front of her students and other teachers, without advance notice, and again taken for questioning. This time Dr. Patrick Martin, Superintendent, Mr. Ed Gibbons, UHS Principal, and Ms. Ann Margaret Shannon, President of the UTEA were waiting for Viki in the room.

24. Before Viki was questioned, Ms. Shannon told Viki privately to do whatever she was told without questioning it. Dr. Martin then informed Viki that she was being suspended with pay because of her Facebook post expressing her religious beliefs. (Viki was later forced to return all monies paid to her from this date.)

25. Again, none of these individuals expressed dismay at the racism directed towards Viki, but rather did precisely what the racists had advocated for on the Facebook posts and removed Viki from her position. Viki was not subjected to any sort of pre-suspension process violating her due process. The suspension was simply part of the ongoing pattern of intimidation the Board leveled against Viki as a result of her religious beliefs and/or race. It also represented the

Board's attempt to undermine Viki's reputation and humiliate her.

26. After the interrogation on October 13, 2011 and her suspension, Viki was escorted back to her classroom by both Dr. Martin and Ed Gibbons, and told to remove her personal belongings and to leave the school property. She had to do this in front of her students and other faculty to her further humiliation and embarrassment.

27. On or about October 18, 2011, the Board continued its attempts to undermine Viki's reputation and subject her to humiliation as a result of her religious beliefs by holding a public board meeting where Viki's religious beliefs were criticized openly and publically. The Board held this meeting purposely to subject Viki's religious beliefs to ridicule and scorn, and for the purpose of continuing its program of intimidation and humiliation against her.

28. In or about November of 2011, the Board continued its attempts to silence and intimidate Viki in retaliation to her religious expression and gathered information about Viki to bring tenure charges against her.

29. On December 23, 2011, Defendant Damato informed Viki that she was now suspended without pay and that tenure charges were going to be filed against her. (As mentioned above, Viki was forced to return all salary paid to Viki from October 13, 2011.)

## VIKI IS CONSTRUCTIVELY DISCHARGED

30. As the Board attempted to gather evidence against Viki to bring tenure charges against her, Viki's health deteriorated to the point where she could not longer work from the stress of the intimidation, harassment, and emotional distress that resulted from the investigation and the Defendants' actions.

31. As a result, Viki was forced to resign from her position.

32. She noted that this was because "circumstances surrounding my employment have made it unbearable for me to continue in her position and this certainly would be the same for any reasonable person in my condition." See Exhibit A.

33. She also explained in her resignation letter that the actions of the administration had left her "no alternative but to resign my position as a tenured teaching staff member as, in truth, my health and well-being require that I do so." See Exhibit A.

34. After she resigned her position, the Board quickly settled all other issues, as the systematic intimidation and threats had achieved its purpose of destroying Viki's reputation, damaging Viki physically and emotionally, and forcing her to resign. It did not, however, succeed in forcing her to renounce her religious beliefs.


## STATEMENTS OF LAW

35. Teachers do not shed their constitutional rights at the schoolhouse gate.

36. Non-disruptive, public expression by teachers on issues of public concern outside of the classroom is protected by the First Amendment.

37. Religious speech is fully protected by the First Amendment.

38. The post Viki chose to post in public discussion forum on Facebook was an expression on an issue of public concern that did not bear the imprimatur of the school.

39. The Defendants' actions communicated that a) teacher's are never allowed public displays of religious expression outside of school; and b) unwelcome religious expression on issues of public concern outside of school may be censored.

40. All alleged acts of the Defendants, their officers, agents, servants, employees, or persons acting at their behest or direction, were done and are continuing to be done under the color and pretense of state law, including the statutes, regulations, customs, policies and usages of the State of New Jersey.

41. The First Amendment to the United States Constitution protects the right to freedom of speech from governmental infringement, and forbids government acts respecting an establishment of religion.

42. The Fourteenth Amendment guarantees equal protection of the laws. Each of these constitutional rights and privileges is clearly established and defined.

43. Defendants, therefore, know or should know that restricting Viki's speech violates her federal constitutional rights.

44. Unless and until the enforcement of the Defendants' current policy and practice is enjoined, Viki will suffer and continue to suffer irreparable harm to her federal constitutional rights.

## FIRST CAUSE OF ACTION – CONSTRUCTIVE DISCHARGE

45. Plaintiff hereby incorporates and realleges all preceding paragraphs.

46. Defendants initiated pre-discipline actions against Viki in a public way that was intended to intimidate her, that subjected her to scorn and ridicule from her peers, and publicly humiliated her in front of her students and students' parents. On two separate occasions, Defendants removed Viki from her classroom with no advance notice, in front of her students and other teachers, and interrogated Viki. Defendants then made the unilateral decision to suspend her without any due process of law.

47. After suspending Viki from her tenured position without the requisite process, Defendants also subjected to Viki to public scorn and ridicule by holding a public meeting meant to intimidate and humiliate her. At the meeting, Defendants allowed and encouraged protesters to openly criticize Viki's religious beliefs and views on an issue of public concern.

48. Defendants did not defend Viki against the racism she faced, but rather acted with the same purpose and according to the wishes of those who attacked her with racist comments.

49. Defendants then subjected Viki to an extended process of intimidation and humiliation to manufacture tenure charges against her for the vague and overbroad standard of unbecoming conduct, after unlawfully suspending her without due process. This process was extremely emotionally draining on Viki. The psychological toll manifested itself in physical and emotional trauma, of which Defendants were fully aware.

50. Defendants intentionally initiated pre-discipline actions, public hearings and tenure charges that subjected Viki to public scorn, ridicule, intimidation and humiliation as a result of her religious beliefs and/or race with the intention of forcing Viki to resign.

51. Viki's religious beliefs and/or race were among the motivating factors in Defendant's actions, even if they were not the only or primary factors.

52. These conditions were so intolerable that any reasonable person would feel forced to resign.

53. When Viki resigned, she noted in her resignation letter that she was resigning as a result of the actions the Board had taken against her, and that any reasonable person in her situation would also be forced to resign.

54. Defendant therefore unlawfully terminated Viki as its actions amounted to a constructive discharge.

WHEREFORE, Plaintiff respectfully request that the Court grant the relief set forth hereinafter in the prayer for relief.

## SECOND CAUSE OF ACTION – VIOLATION OF DUE PROCESS

55. Plaintiff hereby incorporates and realleges all preceding paragraphs.

56. The Fourteenth Amendment to the United States Constitution, by guaranteeing due process of law to permanent public employees, expresses a public policy of stability in public employment. As a permanent employee of Defendant Union Township Board of Education, Plaintiff was entitled to due process of law before being suspended and before being constructively discharged from her employment with the Board.

57. Defendants' suspension and constructive discharge of Plaintiff did not comply with due process as required by the United States Constitution and the Defendant's charter, policies, procedures and rules.

58. Defendants failed to afford Plaintiff the minimum due process requirements guaranteed to Plaintiff when Defendants suspended Plaintiff on October 13, 2011, and constructively discharged Plaintiff without providing Plaintiff the pre-discipline (suspension) due process rights, including the right to be

furnished, before being disciplined via suspension, a copy of all materials relied on by Defendants in determining to effectively terminate Plaintiff's employment.

59. Defendants' suspension and constructive discharge of Plaintiff violated Plaintiff's rights to free speech and free exercise guaranteed by the United States Constitution and the New Jersey Constitution, in that Defendant was constructively discharged for sharing her religious viewpoint on a matter of public concern.

60. Defendants' policies and practice preventing free speech and religious expression by threatening tenure charges for the vague and undefined standard of "unbecoming conduct" fail to adequately advise, notify, or inform teachers that freedom of speech and religious expression is prohibited.

61. Because Defendants' policies and practice preventing free speech and religious expression fail to adequately advise, notify, or inform teachers, they are unconstitutionally vague, on their face and as applied, in violation of the due process guarantee of the Fourteenth Amendment.

62. As a proximate result of Defendants' conduct, Plaintiff has suffered, and will continue to suffer general damages, including physical pain and suffering, mental and emotional pain and suffering, humiliation, fear, anxiety, and loss of personal and professional reputation in an amount according to proof.

63. As a further and proximate result of Defendants' conduct, Plaintiff has suffered, and will continue to suffer special damages, including lost wages and benefits, loss of future earnings, retirement earnings, other employment benefits, out-of pockets expenses, and other economic losses.

64. As more fully described above, Defendants violated Plaintiff's rights intentionally, maliciously and with conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to recover punitive damages from Defendants in an amount according to proof.

65. By reason of the described conduct of Defendants, Defendants, and each of them, are liable to Plaintiff under 42 U.S.C.A. § 1983 for injuries suffered by Plaintiff, in that their conduct deprived Plaintiff of rights, privileges and immunities given Plaintiff by the United States Constitution and the New Jersey Constitution.

WHEREFORE, Plaintiff respectfully requests that the Court grant the relief set forth hereinafter in the prayer for relief.

## THIRD CAUSE OF ACTION – VIOLATION OF FREE SPEECH CLAUSE

66. Plaintiff hereby incorporates and realleges all preceding paragraphs.

67. The First Amendment's Freedom of Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States

Constitution, prohibits censorship of religious expression.

68. Defendants violated Viki's First Amendment right to freedom of speech by suspending her, pursuing tenure charges against her, and constructively discharging her because of the religious content of her speech.

69. Viki's speech on matters of public concern was a substantial or motivating factor in the Board's action of suspending, pursuing tenure charges against, and constructively discharging Viki.

70. The Board would not have taken such actions but for her speech on matters of public concern, and the Individual Defendant's would not have supported the actions against Viki but for her speech on matters of public concern.

71. Defendants' policies and practice allow school officials to exercise unbridled discretion to discriminate against teacher expression outside and unrelated to the school setting on the basis of content or viewpoint.

72. The very existence of unbridled discretion is a form of viewpoint discrimination.

73. Defendants exercised their unbridled discretion to effectively ban Viki's expression.

74. Defendants' policies and practice chill the speech of third parties who might seek to make a public religious expression.

75. Defendants' policies are vague and overbroad.

76. Defendants' policies and practice are content-based restrictions on Viki's expression.

77. Defendants' policies and practice are viewpoint-based restrictions on Viki's expression.

78. Defendants have denied Viki's right to freedom of speech by discriminating against her on the basis of the religious viewpoint of her expression.

79. No compelling state interest exists to justify the effective ban on Viki's expression.   Moreover, Defendant's interest in efficiently fulfilling their responsibilities to the public were hampered by their unconstitutional actions against Viki's freedom of religious expression.

80. Defendants' policies and practice are not the least restrictive means to accomplish any permissible government purpose sought to be served by the actions.

81. Defendants' policies and practice do not leave open ample alternative channels of communication for Viki.

82. Defendants' policies and practice unconstitutionally chill and abridge Viki's right to freely express herself outside of the walls of the school.

83. Defendants' violation of Viki's right of free speech have caused her to suffer irreparable injury. As a direct result of the Defendants' violation of Plaintiff's constitutional rights, Plaintiff has suffered and continues to suffer harm,

including but not limited to: loss of income and loss of other employment benefits, front pay, humiliation, embarrassment, emotion distress, and damage to her reputation. Plaintiff has had to incur reasonable attorney fees and expenses.

84. Viki has no adequate remedy at law to correct the continuing deprivations of her most cherished constitutional liberties.

WHEREFORE, Plaintiff respectfully requests that the Court grant the relief set forth hereinafter in the prayer for relief.

## FOURTH CAUSE OF ACTION – VIOLATION OF FREE EXERCISE CLAUSE

85. Plaintiff hereby incorporates and realleges all preceding paragraphs.

86. Defendants' policies and practice of effectively banning Viki's freedom to express a religious viewpoint on a matter of public concern outside the walls of the school is neither facially neutral nor generally applicable in respect to religion.

87. Defendants' policies and practice of restricting Viki's speech on its religious content and viewpoint selectively impose a burden on expression based upon its religious nature.

88. Defendants have no compelling reason that would justify banning Viki's religious speech on a matter of public concern outside the school.

89. Defendants' policies and practice therefore violate the Free Exercise Clause of the First Amendment to the United States Constitution as incorporated and applied to the states under the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully request that the Court grant the relief set forth hereinafter in the prayer for relief.

## FIFTH CAUSE OF ACTION – VIOLATION OF ESTABLISHMENT CLAUSE

90. Plaintiff's hereby incorporates and realleges all preceding paragraphs.

91. The First Amendment's Establishment Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits the disparagement of religion.

92. Defendants' policies and practice of effectively banning Viki's religious expression on a matter of public concern outside of the school are not neutral, but are invidious and disparaging of religion.

93. No compelling state interest exists to justify the censorship of Viki's religious expression on a matter of public concern outside of the school.

94. Defendants' policies and practice therefore violate the Establishment Clause of the First Amendment to the United States Constitution as incorporated and applied to the states under the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully request that the Court grant the relief set forth hereinafter in the prayer for relief.

## SIXTH CAUSE OF ACTION – VIOLATION OF EQUAL PROTECTION CLAUSE

95. Plaintiff hereby incorporates and realleges all preceding paragraphs.

96. Plaintiff is African American and openly Christian.

97. Under their policies and practice, Defendants have allowed other similarly-situated teachers to express their views on the same issues as Viki.

98. Defendants allow other teachers who are not Christian or African American to express views that do not express a religious viewpoint on the same issues as Viki.

99. Defendants did nothing to address racist comments directed towards Viki because of Viki's religious expression, but rather had the same purpose as those who made racist comments towards Viki insofar as they sought to silence Viki's religious expression.

100. Defendants tacitly approved of racist comments as a means to silence Viki's religious expression.

101. Defendants also openly approved of anti-Christian and anti-religious statements directed at Viki's religious beliefs at a public meeting they held with the intention of subjecting Viki to ridicule and scorn on the basis of her

religious beliefs. Defendants purposely admitted individuals hostile to Viki's religious beliefs with the purpose of intimidating her and forcing her to quit.

102. Defendants have treated Viki disparately when compared to similarly-situated teachers by effectively banning only Viki's expression because of its religious content and/or because of Viki's race.

103. The Board discriminated against Plaintiff on the basis of her religious viewpoint (Christian) and/or her race (African American) with respect to the terms, conditions or privileges of employment when it suspended her, initiated tenure charges against her, and effectively terminated her employment via a constructive discharge.

104. Defendants have no compelling reason that would justify their banning Viki's religious viewpoint on an issue of public concern, and thus no compelling reason to discriminate against Viki on the basis of her religion and/or race.

105. Through their actions, policies, employment practices and conduct directed at Plaintiff of African American descent and Christian religious beliefs, Defendants deprived Plaintiff of her constitutional right to equal protection under the law in violation of 42 U.S.C.A. § 1983.

106. At all relevant times, Defendants acted under the color of state law in willfully and purposefully depriving Plaintiff of constitutionally guaranteed

rights.

107. Defendants' policies and practice therefore violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

108. As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

109. Plaintiff has suffered damages of an on-going and continuous nature.

WHEREFORE, Plaintiff respectfully request that the Court grant the relief set forth hereinafter in the prayer for relief.


## SEVENTH CAUSE OF ACTION – BREACH OF CONTRACT

110. Plaintiff hereby reincorporates and realleges all preceding paragraphs.

111. Viki and the Board were parties to the contract.

112. Under the terms of the contract, the Board agreed, inter alia, not to subject Viki to discrimination on the basis of her religion or her race.

113. More specifically, the contract between the Board and Plaintiff incorporated the Board's equal opportunity policies.

114. Plaintiff is a Christian and African American.

115. Plaintiff was suspended without due process, had tenure charges initiated against her, and was constructively discharged as a result of discrimination against her on the basis of her religion and/or race.

116.   Other similarly individuals expressed an opinion on the same matter of public concern as Viki and were not disciplined or effectively terminated.

117.   Defendants discriminated against Viki on the basis of religion and/or race with respect to the terms, conditions or privileges of employment when it took adverse employment actions against her.

118.   As a direct result of the Board's breach of contract, Viki has suffered and continues to suffer harm, including but not limited to: loss of income and loss of other employment benefits, back pay, front pay, humiliation, embarrassment, emotional distress and damage to her reputation.  In addition, Viki has had to incur reasonable attorney fees and expenses.

WHEREFORE, Plaintiff respectfully request that the Court grant the relief set forth hereinafter in the prayer for relief.


## EIGHTH CAUSE OF ACTION – VIOLATION OF 42 U.S.C. § 1981, AS AMENDED

119.   Plaintiff hereby reincorporates and realleges all preceding paragraphs.

120.   Plaintiff is a member of a protected class, of African American descent.

121.   Plaintiff has been employed by Defendants since January 1, 2000.

122.   At all times relevant, Plaintiff was in a contractual relationship with Defendants within the meaning of 42 U.S.C. § 1981, as amended.

123.   During the course of Plaintiff's employment since approximately October

2011, Defendants have violated Plaintiff's rights by depriving Plaintiff of her right to the enjoyment of all benefits, privileges, terms and conditions of her employment contract "as is enjoyed by white citizens," in violation of 42 U.S.C. § 1981(b), as amended.

124. During the course of Plaintiff's employment since approximately October 2011, Plaintiff has not enjoyed the same benefits, privileges, terms and conditions of employment as have white teachers.

125. Defendants' treatment, practices and policies directed toward Plaintiff, as more fully described in this Complaint, denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property "as is enjoyed by white citizens," in violation of 42 U.S.C. § 1981, as amended.

126. Defendants' treatment, practices and policies directed toward Plaintiff, as more fully described in this Complaint, denied Plaintiff the right to make and enforce contracts "as enjoyed by white citizens," in violation of 42 U.S.C. § 1981, as amended.

127. Through their actions and treatment of Plaintiff, Defendants intended to discriminate against Plaintiff on the basis of Plaintiff's national origin.

128. During the course of Plaintiff's employment with Defendants since approximately October 11, 2011, Plaintiff has been subjected to a discriminatory, hostile and offensive work environment because of Plaintiff's

race, as more fully described in the General Allegations and in Counts One through Seven of this Complaint.

129.   The discriminatory acts and environment described in this Complaint were otherwise known by Defendants.

130.   Despite Plaintiff's complaints about her suspension and tenure charges, Defendants took no appropriate remedial action, but rather reinforced the discriminatory acts and environment.

131.   As a direct and proximate result of the foregoing, Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

132.   Plaintiff has suffered damages of an on-going and continuous nature.

WHEREFORE, Plaintiff respectfully request that the Court grant the relief set forth hereinafter in the prayer for relief.

## NINTH CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT BOARD OF EDUCATION, DEFENDANT DR. JAMES MARTIN, DEFENDANT JAMES DAMATO AND DEFENDANT GIBBONS IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES

133.   Plaintiff hereby incorporates and realleges all preceding paragraphs.

134.   Defendant Board of Education, Defendant Dr. James Martin, Defendant Edward Gibbons, and Defendant James Damato intended to cause severe emotional distress in Plaintiff.

135.  Defendants' conduct was extreme, outrageous and beyond the bounds of moral decency.

136.  Defendants' conduct was so outrageous that no reasonable person could be expected to endure it.

137.  As a result of Defendants' conduct, Plaintiff suffered severe emotional distress.

138.  Plaintiff has suffered damages of an on-going and continuous nature.

WHEREFORE, Plaintiff respectfully request that the Court grant the relief set forth hereinafter in the prayer for relief.

## TENTH CAUSE OF ACTION – DEFENDANT'S CONDUCT VIOLATES PLAINTIFFS' RIGHT TO FREE EXERCISE AND ENJOYMENT OF RELIGION UNDER ARTICLE I, §§ 3 AND 5 OF THE NEW JERSEY CONSTITUTION

139.  Plaintiff repeats the allegations in the preceding paragraphs as if set forth herein at length.

140.  Article I, § 3 of the New Jersey Constitution states, "No person shall be denied the inestimable privilege of worshipping Almighty God in a manner agreeable to the dictates of his own conscience."

141.  Article I, § 5 of the New Jersey Constitution states, "No person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right, nor be segregated in the militia or

in the public schools, because of religious principles, race, color, ancestry or national origin."

142.   Plaintiff has sincerely held religious beliefs that mandate the sharing of her faith with others around her including those on her Facebook account and other members of the public and she seeks exercise the tenets of her faith.

143.   Defendants' policy of refusing Plaintiff the right to express her faith, on its face and as applied, targets the Plaintiff and has impermissibly burdened Plaintiffs' sincerely held religious beliefs and compels her to both change those religious beliefs and to act in contradiction to them.

144.   Defendants' policy of refusing Plaintiff the right to express her faith, on its face and as applied, on Plaintiffs is neither neutral nor generally applicable, but rather specifically and discriminatorily targets the religious speech, beliefs, and viewpoint of those individuals who believe in the Bible, and thus expressly on its face and as applied constitutes a substantial burden on sincerely held religious beliefs that are contrary to other viewpoints on same-sex attractions, behavior, or identity.

145.   Defendants' policy of refusing Plaintiff the right to express her faith, on its face and as applied, has unconstitutionally conditioned state employment on Plaintiff by requiring her to compromise her clearly established right to free exercise of religion and belief to be employed in the public school system.

146.   No compelling state interest justifies the burdens Defendants imposed upon Plaintiff and her rights to the free exercise of religion.

147.   Even if the Defendant's policy mentioned herein were supported by a compelling state interest, they are not the least restrictive means to accomplish any permissible government purpose the policy seeks to serve.

148.   On its face and as applied, Defendants' policy of refusing Plaintiff the right to express her faith is in violation of Plaintiff's rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiff to suffer undue and actual hardship and irreparable injury.

149.   Plaintiff has no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiff respectfully prays for relief against Defendants as hereinafter set forth in their prayer for relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

   a.  Awarding reinstatement and/or front pay;

   b.  Awarding compensatory damages (e.g., pecuniary losses, emotion pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses);

   c.  Reinstating tenure;

   d.  Awarding the costs of this action together with reasonable attorney's fees;

e. All pay, benefits, seniority, promotions, leave and emoluments Plaintiff would have otherwise been entitled to as a police officer had it not been for the unlawful termination of Plaintiff in violation of Plaintiff's First Amendment rights under the United States Constitution and Plaintiff's free speech rights under the New Jersey and United States Constitution;

f. Interest on the back pay at the full legal rate, such interest accruing from the date each paycheck or other pay item disbursement would have been received had Plaintiff not been terminated;

g. General, special, and punitive damages according to proof;

h. A preliminary and/or permanent injunction prohibiting Defendants, or any of them, from taking any punitive action against Plaintiff in response to Plaintiff's exercise of her free speech rights;

i. Attorney fees pursuant to 42 U.S.C.A. § 1988 and 1983.

j. Costs of suit; and

k. Such other and further relief as the court deems just and proper.

Dated:

Respectfully submitted,

By: /s/Demetrios Stratis
DEMETRIOS STRATIS
RUTA, SOULIOS & STRATIS, LLP
10-04 River Road
Fair Lawn, New Jersey 07410
Phone: (201) 794-6200
Facsimile: (201) 794-6300

VERIFICATION

1. I JENYE VIKI KNOX, am the Plaintiff herein and have read the foregoing Verified Complaint and do hereby certify the truth of the contents and statements contained therein.

2. I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: 09/05/2013

JENYE VIKI KNOX

EXHIBIT A

# Jenyé V. Knox

1227 Brookside Avenue
Union, New Jersey 07083-6227

Praise1020@hotmail.com
908 687 2230

June 30, 2012

Dr. Patrick Martin, Superintendent of Schools
Township of Union Board of Education
2369 Morris Avenue
Union, New Jersey 07083

Dear Dr. Martin and Board Members:

It is with immense sorrow that I find I must pen this letter of resignation from the Township of Union Board of Education.

This decision has been painfully difficult for me. I am a teacher. I was born to teach. However, circumstances surrounding my employment have made it unbearable for me to continue in my position and this certainly would be the same for any reasonable person in my situation. As such, I have no alternative but to resign my position as a tenured teaching staff member as, in truth, my health and well-being require that I do so. I feel like I'm being torn in two but I'm confident I am making the best decision for myself and my family.

I will forever be grateful to the Board of Education for the opportunity to affect lives in a most positive manner, through education.

Please accept this letter of resignation, effective July 1, 2012, with sincere and heartfelt distress.

Sincerely,

Jenyé V. Knox

Cc: Sanford Oxfeld, Esq.
     George Huk, NJEA