### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| Jenyé Viki KNOX,<br><br>    Plaintiff,<br><br>v.<br><br>UNION TOWNSHIP BOARD OF<br>EDUCATION et al.,<br><br>    Defendants. | Civ. No. 2:13-5875<br><br>(KM)(MAH)<br><br><br>**OPINION** |

### KEVIN MCNULTY, U.S.D.J.:

Plaintiff Jenyé Viki Knox, a public school teacher, was suspended after making comments on Facebook expressing her religious-based disapproval of a school billboard that contained homosexual content, and of homosexuality in general. The school board brought tenure charges against her before the Commissioner of Education, aimed at obtaining her dismissal. Knox entered into a settlement agreement with the board, under which she voluntarily resigned and refunded the salary paid to her during her suspension. The settlement agreement did not include any more general release of federal or state law claims. Knox has now brought this action, claiming that the school board and its employees discriminated against her on the basis of her race and religion, violated her rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution, and violated her rights under the Free Exercise and Enjoyment of Religion Clauses of the New Jersey Constitution. She seeks monetary damages and injunctive relief, including reinstatement to her teaching position.

1

Now before the court is Defendants' motion (ECF No. 6) to dismiss the complaint. As grounds for dismissal, they cite *Younger* abstention, the primary jurisdiction doctrine, and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 1). For the reasons set forth below, the motion to dismiss is granted in part and denied in part.

## I.   BACKGROUND

### A.   Allegations of the complaint[1]

The plaintiff, Jenyé Viki Knox, is a New Jersey resident who was employed as a special education teacher at the Union Township High School. (Compl. ¶¶7, 14). Knox is African-American, a fact relevant to her claims of discrimination. (*Id.* ¶18).

Defendant Union Township Board of Education (the "Board") is a public entity established, organized, and authorized under the laws of New Jersey, with the authority to sue and be sued. (*Id.* ¶8). District-wide, the Board develops, adopts, implements, and enforces school policies. As most relevant here, the Board administers, operates Union Township High School (the "School"), and supervises the School's employees. (*Id.* ¶9).

Defendant Dr. Patrick Martin is the Superintendent of the Union Township High School District ("District"). (*Id.* ¶11). Martin administers the Board's policies regarding teacher activities on and off campus. (*Id.*).

Defendant James Damato is the attorney for the Board. (*Id.* ¶13). Defendant Edward Gibbons is the principal of the School. (*Id.* ¶12). Damato and Gibbons have administrative duties in the School, where they oversee the activities of teachers and student clubs. (*Id.* ¶¶12–13).[2]

---

[1]    The facts that follow are taken from the complaint (ECF No. 1). Solely for purposes of the Rule 12(b)(6) motion to dismiss, they are assumed to be true.

[2]    I will refer to the Defendants collectively as the "School Defendants."

Knox was first employed as a special education teacher on January 1, 2000. (*Id.* ¶14). She was granted tenure on January 2, 2003. (*Id.* ¶15). Throughout her employment, Knox has remained in good standing and has received good evaluations. (*Id.* ¶16).

At the School, Knox held two ancillary positions of a religious nature. She was the academic advisor for The Seekers Club, which is a Christian Bible study group, and she was the advisor for the School's Gospel Choir. (*Id.* ¶19). Knox was also an ordained minister. (*Id.*). The School Defendants knew she held these positions. (*Id.*).

In September 2011, Knox posted a public message on Facebook stating that a school billboard that promoted alternative lifestyles did not accord with her religious beliefs. (*Id.* ¶17). Knox's Facebook posts, discussed herein, were not done using school equipment or during school hours. (*Id.*). Facebook users commented on Knox's post, and Knox responded. (*Id.* ¶18). Her responses included an explanation of her religious objections to the billboard; statements about the Bible and homosexuality; characterizations of homosexuality as a sin and disobedience to God; and descriptions of salvation through Jesus Christ. (*Id.*). Knox's comments prompted racist posts from other users, who are not identified. (*Id.*).

On or about October 11, 2011, the School Defendants became aware of Knox's Facebook posts. (*Id.* ¶20). Without prior notice, Knox was removed from her classroom. The removal took place during school hours, in front of her students and other teachers. (*Id.*). Knox was taken to a small room; present there were Defendant Damato, Assistant Superintendent Greg Tatum, and Vice President of Union Township Education Association ("UTEA")[3] Jim Gross. (*Id.*).

---

[3]     UTEA represents the teachers in the district.

Knox was asked about the Facebook posts. (*Id.* ¶21). She alleges that she "was then pressured by these individuals to say that her religious beliefs were wrong, and felt extremely intimidated by them." (*Id.*). She alleges that the individuals spoke critically about her religious beliefs and her expression of them. (*Id.*). Those individuals did not discuss or express "dismay" about any of the racist third-party comments to her Facebook posts. (*Id.*). That silence, says Knox, amounted to "tacit[] approv[al] of the racism she was subject to." (*Id.* 22).

Apparently Knox returned to the classroom. On October 13, 2011, however, she was again removed from her classroom. (*Id.* ¶23). UTEA President Ann Margaret Shannon took Knox aside and "told [Knox] privately to do whatever she was told without questioning it." (*Id.* ¶24). Knox was then questioned, this time by Superintendent Martin, Principal Gibbons, and Shannon. (*Id.*) Martin told Knox that she would be suspended with pay because of her Facebook posts. (*Id.*).

Knox alleges that no one at this second meeting mentioned the racist comments to her Facebook posts. Instead, they "did precisely what the racists had advocated for on the Facebook posts and removed [Knox] from her position." (*Id.* ¶25). Knox alleges that her suspension was not accompanied by due process. (*Id.*). The suspension, she says, was "part of the ongoing pattern of intimidation the Board leveled against [her] as a result of her religious beliefs and/or race," and it "represented the Board's attempt to undermine [her] reputation and humiliate her." (*Id.*)

Following her suspension, Knox was taken back to her classroom. She was told to take her personal belongings and leave the School. (*Id.* ¶26). This, too, occurred in front of her students and other teachers, causing her "further humiliation and embarrassment." (*Id.*).

On October 18, 2011, the Board held a public meeting. The purpose of this meeting, Knox alleges, was to continue the Board's

"program of intimidation and humiliation against her." (*Id.* ¶27).

On December 23, 2011, the Board's attorney, Damato, informed Knox that she would be suspended without pay and that Tenure Charges would be filed against her.[4] (*Id.* ¶29).

Following these events, Knox's health allegedly deteriorated. On June 30, 2012, she resigned from her teaching position as a result of "the stress of the intimidation, harassment, and emotional distress that resulted from the investigation and the Defendants' actions." (*Id.* ¶30–31 and Ex. A).

### B.    Other facts from the moving papers

The parties' moving papers fill in some of the details of the events related in the complaint. Although a Rule 12(b)(6) motion is generally confined to the complaint, these facts provide useful background information; are referred to in both sides' moving papers; do not seem to be seriously in dispute except as noted; and in any event consist largely of public documents appropriate for judicial notice.

On December 21, 2011, the School District filed Tenure Charges of insubordination and "conduct unbecoming" against Knox. (Cohen Cert. Ex. B[5]; *see also* Pl. Opp. 10, ECF No. 10). Knox filed an Answer to the Tenure Charges, asserting six affirmative defenses, four of which were based on the First Amendment. (Cohen Cert. Ex. C).

On October 26, 2012, some four months after Knox's resignation, the parties settled the Tenure Charges. (Cohen Cert. Ex. D). Pursuant to

---

[4]    As noted below, administrative proceedings were filed against Knox on December 21, 2011, and later settled. The Complaint, while claiming deprivation of due process, says little or nothing about the procedures that were followed.

[5]    Certification of Jonathan F. Cohen, Esq., with exhibits, dated November 20, 2013, submitted in support of the School Defendants' motion to dismiss, ECF No. 6-2, cited as "Cohen Cert.".

a Settlement Agreement, Knox agreed to resign and refund the $5,854.29 she received as pay during her period of suspension. The parties agreed to forgo a formal hearing. (*Id.* at 2; Pl. Opp. 10). On November 13, 2012, the Board approved the settlement. (Cohen Cert. Ex. D, attachment).

On November 29, 2012, Administrative Law Judge JoAnn LaSala Candido (the "ALJ") approved and so-ordered the Settlement. (Cohen Cert. Ex. D at 3). On December 14, 2012, the Commissioner of Education filed a final decision that approved the settlement and dismissed the Tenure Charge matter, subject to the parties' compliance with the terms of the Settlement. (Cohen Cert. Ex. E).

As a teacher, Knox was represented by the Union Township Education Association ("UTEA"). (Cohen Cert. ¶2)). Her employment was subject to the terms of a Collective Bargaining Agreement ("CBA") between the UTEA and the Board. (A copy of the CBA is at Cohen Cert. Ex. A)). The CBA provides for resolution of disputes through a grievance procedure that culminates in binding arbitration. (*Id.* (citing CBA, Cohen Cert. Ex. A, Art. 3)).

### C.   **This Action**

On October 2, 2013, Knox filed the complaint in this action. The complaint alleges ten causes of action: (1) constructive discharge; (2) violation of Due Process; (3) violation of the Free Speech Clause; (4) violation of the Free Exercise Clause; (5) violation of the Establishment Clause; (6) violation of the Equal Protection Clause; (7) breach of contract; (8) violation of 42 U.S.C. § 1981; (9) intentional infliction of emotional distress against the School Defendants in their official and individual capacities; and (10) violation of the Free Exercise and Enjoyment of Religion Clauses of the New Jersey Constitution. Knox seeks declaratory and injunctive relief as well as compensatory and punitive damages. Specifically, Knox seeks "back pay, front pay,

reinstatement of tenure, compensation for emotional pain and suffering, reimbursement of costs, attorney fees," and any other equitable relief this Court may award. (Compl. ¶2).

The complaint asserts that the Court has federal-question jurisdiction over the claims involving the First and Fourteenth Amendments, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq. See* 28 U.S.C. § 1331. Knox invokes the Court's supplemental jurisdiction over the state law claims, which are related to the federal claims and arise from the same facts. *See* 28 U.S.C. § 1367.

The School Defendants move to dismiss based on *Younger* abstention, the primary jurisdiction doctrine, failure to exhaust contractual remedies, failure to timely file a Tort Claims Act notice, and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.    DISCUSSION
### A. Rule 12(b)(6) standard

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).[6]

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation

---

[6]     *See* n. 7 & 8, *infra,* regarding motions to dismiss on grounds of abstention and primary jurisdiction.

to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### B. Motion to dismiss based on *Younger* abstention (Counts II, III, IV, V, VI, VIII)

The School Defendants' motion to dismiss rests in part on the federalism-based abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971).[7] *Younger*, they say, bars Knox's Free Speech claim, Free Exercise claim, Establishment claim, and religion-based Equal Protection claim (Counts III, IV, V, and VI) because they were presented as defenses in the Tenure Charge proceeding, which was settled. (Def. Mot. 8). Although Knox did not present her due process claim (Count II), the race-portion of her Equal Protection claim (Count VI), and her Section 1981 claim

---

[7]    Strictly speaking, *Younger* abstention is not analyzed under either Rule 12(b)(1) or 12(b)(6). A *Younger* motion to dismiss is "in the nature of" a 12(b)(6) motion in that matters outside of the pleadings are not to be considered. *Gwynedd Properties, Inc. v. Lower Gwynedd Twp*, 970 F.2d 1195, 1206 n.18 (3d Cir. 1992); *see also Dutton v. Court of Common Pleas of Philadelphia Domestic Relations Div.*, 215 F. App'x 161, 162 (3d Cir. 2007) (treating *Younger* abstention separately from a 12(b)(6) motion)). The complaint does not describe the administrative proceedings in any detail. Both sides' papers, however, refer to them at length, and I have considered the filed pleadings and orders as matters appropriate for judicial notice. *See generally* Fed. R. Evid. 201.

(Count VIII) as defenses to the Board's Tenure Charges, she could have done so. Therefore, say the defendants, these claims, too, should be dismissed. (Def. Mot. 8).

The Settlement by its terms extended only to the Tenure Charge. The Board denies Knox's assertion that they explicitly agreed to her reservation of rights as to other claims. It is undisputed, however, that the Board only settled the Tenure Charge, and did not obtain a general release as part of that Settlement.

The *Younger* abstention doctrine requires federal courts to abstain from interfering with certain pending state proceedings. *See Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176, 180 (3d Cir. 2014). It applies rarely, "in only three 'exceptional' classes of cases: (1) 'state criminal prosecutions,' (2) 'civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Id.* (citing *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013)).

*Sprint* marked a partial return to the origins of *Younger* as a doctrine prohibiting interference with state criminal or quasi-criminal proceedings. *Id.* at 181. Earlier case law, however, remains relevant. In particular, the court must consider three factors identified in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982); *see Sprint*, 134 S.Ct. at 584. Condensing somewhat, those three factors are that there be (1) an ongoing or pending state or administrative judicial proceeding (2) implicating important state interests (3) in which the plaintiff has an opportunity to raise the issues she seeks to litigate in federal court.

There is no "ongoing" proceeding with which this action would interfere. The Tenure Charge was settled long ago, and the Commissioner adopted the settlement as a final decision.

Presumably (although it would have made little sense to do so)
Knox could have appealed to State court the Commissioner's decision to
adopt the settlement to which she had agreed. To that extent, it might be
said that she failed to exhaust her state appellate remedies. Based on
that non-exhaustion, the School Defendants assert that Knox's case is
"pending" for purposes of *Younger.*

Defendants rely primarily on *O'Neill v. City of Philadelphia*, 32 F.3d
785, 791 (3d Cir. 1994), for the proposition that "where a state
administrative proceeding has become final due to a federal claimant's
failure to exhaust administrative remedies, [the matter] remains 'pending'
for *Younger* purposes." *O'Neill,* however, did not involve a fully negotiated
and administratively approved settlement, like the one here. Rather, it
was a case "where a coercive administrative proceeding ha[d] been
initiated by the State in a state forum, where adequate state-court
judicial review of the administrative determination [was] available to the
federal claimants, and where the claimants [had] chosen not to pursue
their state-court judicial remedies, but [had] instead sought to invalidate
the State's judgment by filing a federal action." *Id.*

Here, Knox is not attempting an end-run federal appeal of a state
judgment. The Commissioner's decision, via settlement, addressed the
issues of tenure and repayment of salary. Knox does not sue to overturn
or invalidate that settlement. Instead, she asserts claims for damages
and other relief based on alleged deprivations of constitutional and other
rights. The Board criticizes Knox for entering into a settlement and
thereby preventing the entry of judgment. But no less than Knox, the
Board agreed to compromise the Tenure Charge in a way that rendered
state-court review moot. When settling the Tenure Charge, the Board
could have attempted to obtain a more general release; it didn't.

The second *Middlesex* factor involves the importance of the State's
interest in the administrative proceeding. Teachers' conduct and

competence are unquestionably important state interests. On the other hand, however, the Board entered into a settlement that vindicated that interest to its own satisfaction. The Commissioner found the settlement to be a responsible one, and approved it. Even now, the School Defendants state that "the Board had little choice but to accept what could only be perceived as a favorable settlement." (Def. Reply Br. at 6)

Finally, addressing the third *Middlesex* factor, I find abstention inappropriate because Knox did not have an adequate opportunity to bring her constitutional claims in the Tenure Charges proceeding. True, some of her current claims are analogous to *defenses* that Knox did assert or could have asserted to the Tenure Charge. But I have nothing before me to indicate that the administrative proceeding afforded Knox the opportunity to bring *claims* at all.

Persuasive here is *Prevost v. Twp. of Hazlet*, 159 F. App'x 396 (3d Cir. 2005). There, a police officer in Hazlet, New Jersey, was subjected to disciplinary proceedings and eventually dismissed. He sued the Township of Hazlet and several of its employees under Section 1983. Even though the administrative disciplinary proceeding remained pending, and the federal case rested on the same facts, the Third Circuit found abstention unwarranted. It emphasized three factors: (1) the only opposing party in the administrative proceeding was the Township, and not its employees, who were parties to only the federal proceeding; (2) the only question in the administrative proceeding was whether the officer's termination violated state statutes or regulations, not federal law; and (3) in the administrative proceedings, the officer could not obtain certain injunctive and monetary relief that he could obtain in federal court. *Id.* at 398.

Those three factors are present here as well. The only parties to Knox's Tenure Charge settlement were Knox and the School District, not the whole range of parties sued here. The only question before the

Commissioner of Education was whether Knox's conduct was "unbecoming" under state law. Here, the issues concern the School Defendants' potential liability for violating Knox's federal and state constitutional rights. In the foregone Tenure Charges proceeding, Knox could not have obtained anything like the injunctive and monetary relief that she seeks here.

I observe that much of the School Defendants' argument seems to revolve around the possibility of Knox's obtaining in this action a particular subcategory of relief: an injunction restoring her to her teaching position. Whether such relief is barred by the Settlement is an issue I do not reach here. The larger point is that the claims are not barred. The facts here do not make out a case for *Younger* abstention.

## C. Motion to dismiss based on primary jurisdiction doctrine (Counts III, IV, V, VI, X)

The School Defendants next argue that Counts III, IV, V, VI, and X must be dismissed because the Commissioner of Education had primary jurisdiction to determine whether Knox's conduct violated New Jersey school law. (Def. Mot. 17).[8] Their argument is not persuasive. This federal action does not seek a determination of whether Knox's conduct was "unbecoming" within the meaning of New Jersey school law.

The doctrine of primary jurisdiction applies to claims which contain some issue that lies "within the special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993). In a proper case, a court will refer the matter to the relevant agency and stay the court case pending the completion of administrative proceedings. *Id.*

---

8    "The doctrine of primary jurisdiction, despite its name, does not implicate the jurisdiction of a federal court." *James v. Global Tel*Link Corp.*, No. 13-4989-WJM-MF, 2014 WL 4425818, at *5 (D.N.J. Sept. 8, 2014) (quoting *Puerto Rico Mar. Shipping Auth. v. Valley Freight Sys., Inc.*, 856 F.2d 546, 549 (3d Cir. 1988)). As in the case of *Younger* abstention, this motion to dismiss is seemingly best understood as a quasi-Rule 12(b)(6) motion.

The doctrine "serves to maintain uniformity and consistency, uphold the integrity of a regulatory scheme, and establish a 'workable relationship between the courts and administrative agencies.'" *Coyle v. Hornell Brewing Co.*, No. CIV.08-02797 (JBS), 2010 WL 2539386, at *3 (D.N.J. June 15, 2010) (quoting *MCI Telecomms. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1105 (3d Cir. 1995)).

The case law has developed a four-factor test for determining whether the primary jurisdiction doctrine applies:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
>
> (2) whether the question at issue is particularly within the agency's discretion;
>
> (3) whether there exists a substantial danger of inconsistent rulings;
>
> (4) whether a prior application to the agency has been made.

*Id.*

Taking factors 1 and 2 together, I find that this case does not pose technical issues committed to an agency's discretion. True, under N.J.S.A. § 18A:6-9, the Commissioner has jurisdiction over "all controversies and disputes arising under the school laws." But "[t]he statute clearly implies that where the controversy does *not* arise under the school laws, it is outside the Commissioner's jurisdiction even though it may pertain to school personnel." *Galbraith v. Lenape Reg'l High Sch. Dist.*, 964 F. Supp. 889, 895 (D.N.J. 1997) (internal quotation and citation omitted). And although constitutional, state law, and common law claims may "relate to [a plaintiff's] public school employment, none of these claims arises under the school laws." *Id.* (internal quotation and citation omitted) (ruling that Title VII, NJLAD, and breach of contract claims do not arise under school laws); *see e.g.,*

*Stallone v. Camden Cnty. Technical Sch. Bd. of Educ.*, No. CIV. 12-7356 RBK/JS, 2013 WL 5178728, at *8 (D.N.J. Sept. 13, 2013) ("Thus, while the [Office of Administrative Law] may hear matters such as whether a school employee's tenure rights are violated by a compensation decrease, it does not have jurisdiction to determine whether allegedly retaliatory employment decisions violate other law.").

Knox challenges the Board's treatment of her, as well as its policies and practices, under the Free Speech Clause, Free Exercise Clause, Establishment Clause, Equal Protection Clause, and New Jersey's Free Exercise and Enjoyment of Religion Clauses. Those are not school law claims, but rather state and federal constitutional claims. As such, they are not committed to the Commissioner's jurisdiction and do not invoke any specialized administrative expertise. The question at issue is not whether Knox should be disciplined. Rather, this Court is asked to determine whether the School Defendants' conduct violated Knox's constitutional rights. The Commissioner's jurisdiction does not encompass adjudication of claims at law or equity that the Board's actions or policies violate constitutional law. Nor are such determinations committed to the Commissioner's discretion.

For similar reasons, there is little danger of inconsistent rulings. Should a particular form of relief—reinstatement, say—contravene the parties' settlement agreement, that may be brought to this court's attention. The mere existence of a settlement agreement, however, is not inconsistent with a potential finding of a constitutional violation.

Nor are these claims the subject of a prior application. In her Answer to the Tenure Charges, Knox raised her constitutional contentions as defenses, not as claims. In any event, they were never adjudicated, so there is no danger of disrupting a past judgment.

The doctrine of primary jurisdiction does not bar this action.

14

### D. Rule 12(b)(6) motion to dismiss claim for constructive discharge (Count I)

The School Defendants next argue that Count I must be dismissed for failure to state a claim of "constructive discharge." They assert (1) that constructive discharge is not an independent cause of action, but rather part of an employment discrimination claim; and (2) that Knox did not endeavor to remain employed and so her complaint fails to establish the elements of constructive discharge. (Def. Mot. 21–23).

In response, Knox acknowledges that constructive discharge is not an independent cause of action. *See Knabe v. Boury Corp.*, 114 F.3d 407, 408 n.1 (3d Cir. 1997) ("[Plaintiff's] constructive discharge claim, as presented here, is not a separate ground for relief."); *Matos v. PNC Fin. Servs. Grp.*, No. CIV. 03-5320 (RBK), 2005 WL 2656675, at *8 (D.N.J. Oct. 17, 2005) ("However, constructive discharge is merely a form of adverse employment action, and is not an independent claim."); *Gilbert v. Phila. Media Holdings LLC,* 564 F. Supp. 2d 429, 440 (E.D. Pa. 2008) ("Constructive discharge, however, is not an independent claim—it is a type of adverse employment action that may comprise part of a racial harassment claim.")). The motion to dismiss Count I in its current form is therefore GRANTED.

Pivoting, Knox contends that her claim, although entitled "constructive discharge," is actually one for wrongful discharge and employment discrimination under Title VII. The Court, she says, should permit her to so amend the claim. (Pl. Opp. 26). But such an amendment, say the School Defendants, would be futile, because Knox has failed to comply with Title VII's mandatory requirement that she have exhausted administrative remedies. (Def. Reply 10–11).

"In Title VII actions, failure to exhaust administrative remedies is an affirmative defense in the nature of statute of limitations." *Williams v. Runyon,* 130 F.3d 568, 573 (3d Cir. 1997) (internal citations omitted).

"Because failure to exhaust administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving that the plaintiff has failed to exhaust administrative remedies." *Id.* (internal citations omitted). Under Third Circuit precedent, failure to exhaust administrative remedies under Title VII "is grounds for dismissal on a Rule 12(b)(6) motion, provided that the defendant has met the burden of pleading . . . that the plaintiff has failed to exhaust administrative remedies," *Slingland v. Donahoe*, 542 F. App'x 189, 191 (3d Cir. 2013) (internal quotations and citations omitted). Alternatively, the Third Circuit has "recognized that *sua sponte* dismissal may be appropriate where the plaintiff concedes that he failed to exhaust [administrative remedies." *Fernandez v. Rose Trucking*, 429 F. App'x 145, 146 (3d Cir. 2011) (internal citation omitted).

Knox has made no assertion that she did exhaust her administrative remedies for purposes of Title VII. Because of her shift of theory, the School Defendants were not placed on notice that they would be required to plead and prove non-exhaustion. Under the circumstances, I will permit amendment only if presented with a proper motion under Rule 15. Before permitting an amendment, I will require a showing that amendment would not be futile—*i.e.,* at least a plausible allegation that the exhaustion requirement is satisfied or should be excused.

### E. Rule 12(b)(6) motion to dismiss claim of due process violation (Count II)

In Count II, Knox alleges three varieties of due process violation: (1) a procedural due process violation in that the School Defendants failed to provide her with notice and a hearing; (2) a procedural due process allegation that the School Defendants' practices and policies, or the standards under which Knox was prosecuted (presumably, in the Tenure Charge proceeding) are void for vagueness, on their face and as applied;

and (3) a substantive due process claim in that that the standards under which the District prosecuted Knox were overbroad. (Pl. Opp. 27–28).

Because at least the first claim is legally viable, I will deny the motion to dismiss Count II.

Knox alleges that she "was entitled to due process of law before being suspended and before being constructively discharged from her employment with the Board." (Compl. ¶56). Although her allegations regarding a due process violation are scant, they are sufficient to survive a Rule 12(b)(6) motion to dismiss.

"The essential requirements of any due process claim are notice and the opportunity to be heard." *Zappan v. Pa. Bd. of Prob. & Parole*, 152 F. App'x 211, 220 (3d Cir. 2005). The notice and hearing must be "at a meaningful time and in a meaningful manner that is appropriate to the nature of the case." *Emri v. Evesham Twp. Bd. of Educ.*, 327 F. Supp. 2d 463, 472 (D.N.J. 2004) (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)) (internal quotations omitted). As the Third Circuit has instructed:

> [I]t is by now well established that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Due process is flexible and calls for such procedural protections as the particular situation demands. For instance, the Supreme Court has rejected the proposition that due process *always* requires the State to provide a hearing prior to the initial deprivation of property. Accordingly, resolution of the issue whether the administrative procedures provided [] are constitutionally sufficient requires analysis of the governmental and private interests that are affected.

*Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 220 (3d Cir. 2009) (internal quotations and citations omitted).

The Supreme Court has laid out three factors courts must use in determining what process is constitutionally due prior to a deprivation of

rights:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.

*Gilbert v. Homar*, 520 U.S. 924, 931–32 (1997) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)) (called the "*Mathews* analysis").

A tenured public employee may have the right to certain procedures prior to suspension and termination. Among these are "oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (internal citations omitted). The Third Circuit has held that a tenured public teacher could not be suspended without some sort of hearing—either pre- or post-suspension. *See Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1078 (3d Cir. 1990) ("We need not decide in this case whether [the teacher] was entitled to a pre-suspension hearing, as he contends, or whether a post-suspension hearing sufficed. . . . [The teacher] received no hearing, either before or after the suspension, and hence if he was suspended, as the record suggests, he was deprived of due process.").

The exact level of process to which a tenured public employee is entitled, however, is context-specific. For example, the Third Circuit has held that a teacher's "due process rights were not violated when he was placed on paid suspension without a prior hearing after allegations of serious misconduct and criminal activity in his classroom arose from credible sources." *Jerrytone v. Musto*, 167 F. App'x 295, 301–02 (3d Cir. 2006) (not precedential). In that context, a post-suspension hearing would have satisfied due process requirements.

What process is required, and when it is required, are questions
better addressed on a motion for summary judgment. At that stage, the
parties will have presented this Court with sufficient information to
conduct a *Mathews* analysis.

For now, Knox's allegations are sufficient to surmount the
threshold of a motion to dismiss. Knox alleges that, prior to her
suspension, some or all of the School Defendants "interrogated" her
(Compl. ¶21) and pressured her to abandon her religious beliefs (*Id.* ¶21).
Thereafter, without further process, she was suspended with pay. (*Id.*
¶¶24–25). Following a Board meeting, she was suspended without pay.
(*Id.* ¶¶27, 29). Knox generally alleges that she was not given the due
process to which she was entitled under the School Defendants' "charter,
policies, procedures and rules." (*Id.* ¶57). She also alleges that the School
Defendants did not provide her "a copy of all materials relied on by
Defendants in determining to effectively terminate [her] employment." (*Id.*
¶57).

If Knox was not given meaningful notice, or an opportunity to
respond to the accusations against her, either before or after her
suspension, that might amount to a violation of due process. As to the
administrative proceedings that followed Knox's suspension, the
Complaint is virtually silent—possibly a major omission, but one that
can be explored in discovery. Whether, as the School Defendants argue,
due process requirements were satisfied by the meetings they had with
Knox, the public Board meeting, and the Tenure Charge process itself, is
a question better answered at the summary judgment stage. (Def. Mot.
23–24). At that point, the Court will have before it the facts necessary for
the context-specific *Mathews* analysis.

Because the first theory asserted under Count II is going forward, I
do not reach the second and third alternative theories. The discovery will
not vary substantially depending on whether they are in or out of the

case, and they may, like the first theory, be addressed on summary judgment.

The motion to dismiss Count II is DENIED.

### F. Failure to exhaust remedies under Collective Bargaining Agreement (Count VII)

The School Defendants argue that Count VII of Knox's complaint, alleging breach of contract, should be dismissed because Knox failed to exhaust administrative remedies available to her in a Collective Bargaining Agreement ("CBA") between the Union representing her and the Board. (Def. Mot. 25; *see* Cohen Aff. Ex. A (CBA)). Defendants' contentions, irrespective of their legal merits, require development in discovery. They raise potential issues of fact better addressed at the summary judgment stage.

The motion to dismiss Count VII is therefore DENIED.

### G. Failure to file a timely Tort Claims Act Notice for intentional infliction of emotional distress (Count IX)

Because Knox has failed to comply with the notice requirements of the New Jersey Tort Claims Act, her claim for intentional infliction of emotional distress ("IIED") will be dismissed.

The NJ TCA section concerning the time for the presentation of claims provides:

> A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the 90th day after accrual of the cause of action. After the expiration of six months from the date notice of claim is received, the claimant may file suit in an appropriate court of law. The claimant shall be forever barred from recovering against a public entity or public employee if:
>
> a. The claimant failed to file the claim with the public entity within 90 days of accrual of the claim except as otherwise provided in N.J.S.59:8-9; or
> b. Two years have elapsed since the accrual of the claim; or

      c. The claimant or the claimant's authorized representative entered into a settlement agreement with respect to the claim.

N.J.S.A. § 59:8-8. The TCA does provide for leave to file a late notice of claim under certain circumstances:

> A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. . . . provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.

N.J.S.A. § 59:8-9.

      Because Knox's claim of intentional infliction of emotional distress sounds in state tort law, she was required to file a Notice. *See, e.g.*, *Velez v. City of Jersey City*, 850 A.2d 1238, 1244 (N.J. 2004) (TCA's notice requirements apply to both negligent and intentional torts); *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 602 (D.N.J. 2002) (state common law tort claims, including intentional infliction of emotional distress, are subject to TCA's notice requirements).

      Knox does not deny that she failed to file a TCA Notice. Nor can she do so now. All of the alleged events occurred between October 11, 2011 (when Knox was first approached by the Board about her Facebook comments (Compl. ¶20)) and October 26, 2012 (when the parties settled the Tenure Charges (Def Mot. 2; Pl. Opp. 10)).[9] Therefore, at the latest,

---

[9]    This is a generous interpretation of the nature and potential time frame of the IIED claim. Knox's complaint does not specifically allege what conduct she considers "extreme, outrageous and beyond the bounds of moral decency." (*See* Compl. ¶¶133–138.) That lack of specificity does not, however, bear on the requirement of filing a TCA Notice. And because Knox does not allege that the

Knox was required to file her Notice within 90 days of October 26, 2012—a period that expired two years ago. *See* N.J.S.A. § 59:8-8. Likewise expired is the one-year period to seek leave from the Superior Court of New Jersey to file a late notice of claim. *See* N.J.S.A. § 59:8-9.

Knox attempts to excuse her failure to file a TCA Notice. She urges that "where claims are predicated upon the Constitution, the 'injury' is not subjected to the requirements of the Tort Claims Act." (Pl. Opp. 33 (citing *Lloyd v. Borough of Stone Harbor*, 432 A.2d 572, 580 (N.J. Super. Ct. Ch. Div. 1981) (finding "that plaintiff's claim, based on the New Jersey Constitution, is subject to the notice requirement imposed by the act."))). That argument, though true enough, misses the point. The School Defendants seek to dismiss Knox's tort claim, not her constitutional claims, based on her failure to file a TCA Notice.

Because Knox has failed to comply with the TCA's Notice requirement, the motion to dismiss Count IX of her complaint, alleging intentional infliction of emotional distress, is GRANTED.

### H. Rule 12(b)(6) motion to dismiss race-based Equal Protection Claim (Count VI)

The School Defendants argue that Knox has not sufficiently pled a claim of racial discrimination under the Fourteenth Amendment's Equal Protection Clause.[10] (Def. Mot. 30). Knox has failed to allege facts tending

---

School Defendants took any action following the settlement of the Tenure Charges, that is the latest possible date for Knox's IIED claim to have arisen.

[10]     Both Knox and the School Defendants discuss the "class of one" theory of recovery for an Equal Protection claim. (Def. Mot. 31; Pl. Opp. 35). Under that theory, a plaintiff who has been subjected to differential treatment may recover even though the differential treatment was not due to the plaintiff's membership in a protected class. *See, e.g., Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (employing a rational basis standard for such claims). It has no application here.

    First, the Supreme Court has disallowed such a class-of-one claim in the context of public employment. *See Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 605 (2008) ("Thus, the class-of-one theory of equal protection—which

to suggest that individuals similarly situated (but for their race) were treated differently. Her racial discrimination claim will therefore be dismissed.

Knox's race-based Equal Protection claim is based on the following allegations: (1) that the School Defendants allowed other teachers who are not African American to express religious viewpoints on similar issues, but did not allow Knox, who is African-American, to do so (Compl. ¶¶98, 102); (2) that the School Defendants did nothing to address racist comments on Knox's Facebook page, and therefore "tacitly approved" the comments (*Id.* ¶¶99–100); and (3) that the School Defendants suspended Knox, initiated tenure charges against Knox, and constructively discharged Knox because of her race (*Id.* ¶103).

To state a claim under the Equal Protection Clause, a plaintiff must allege that (1) she is a member of a protected class; (2) that she was treated differently from similarly situated individuals; and (3) that this disparate treatment was based on her membership in the protected class. *See Kasper v. Cnty. of Bucks*, 514 F. App'x 210, 214 (3d Cir. 2013) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)).

In this case, Knox summarily states in her complaint that "Defendants have allowed other similarly-situated teachers to express

---

presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns.").

Second, Knox is not even alleging that she is a "class of one." Hence it is puzzling that, in her opposition brief, she states that "Defendants concede that the 'class of one' theory applies to Plaintiffs' [sic] circumstances." (Pl. Opp. 35). Knox's Equal Protection claim is based on her allegation that the School Defendants treated Knox differently because of her membership in a protected class, *i.e.,* her racial group or religious affiliation.

their views on the same issues as [Knox]." (Compl. ¶97). Knox also alleges that "Defendants allow other teachers who are not Christian or African American to express views that do not express a religious viewpoint on the same issues as [Knox]." (*Id.* ¶98). These allegations are conclusory, not factual. Knox has not identified any specific instance of a similarly situated teacher being treated differently. A blanket statement that such instances have occurred is not sufficient to state a claim. *See, e.g., Sloan v. City of Pittsburgh*, 110 F. App'x 207, 212 (3d Cir. 2004) (citing *Simpson v. Kay Jewelers*, 142 F.3d 639, 645 (3d Cir. 1998)) ("Because [Plaintiff] failed to allege any evidence of a similarly situated employee treated differently, this claim must fail.").

By the same token, a bare allegation that the Tenure Charge and suspension were racially based does not, without more, state a claim. The complaint does not allege any connection between the school officials and the anonymous persons who posted on Knox's personal Facebook page.[11] No cognizable claim arises from the allegation that the school officials failed to express "dismay" about those comments.

Because Knox does not allege specific instances of similarly situated employees being treated differently, she fails to state a race-based discrimination claim under the Equal Protection Clause. Thus, the motion to dismiss the racial-discrimination component of Count VI is GRANTED. Because the parties do not address the religious component of the Equal Protection claim, I do not address it either; it is not included within this order of dismissal.

---

[11]    I infer that these posts were the work of posters, known colloquially as "trolls," who take advantage of the anonymity of the internet to post malicious or offensive material. That inference is not strictly necessary, however. When I say "anonymous" here, I mean that the complaint does not identify the posters or draw any connection whatever between the posts and the School Defendants.

## I.  Rule 12(b)(6) motion to dismiss claim under 42 U.S.C. § 1981 (Count VIII)

The School Defendants argue that Knox's race discrimination claim under 42 U.S.C § 1981 must be dismissed because Knox fails to plead any facts to support her allegation that the School Defendants' actions were racially motivated. (Def. Mot. 33). Because Knox does not plead sufficient facts to state a claim for a violation of Section 1981, Count VIII will be dismissed.

Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts, . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. An action for damages under 42 U.S.C. § 1983 "constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009).

Section 1981 has "been deemed to be 'essentially coterminous with the Equal Protection Clause, in that 'purposeful discrimination that violates the Equal Protection Clause of the Fourteenth Amendment will also violate § 1981.' ' " *Williams v. Rowan Univ.*, No. CIV 10-6542 RMB/AMD, 2014 WL 7011162, at *12 (D.N.J. Dec. 11, 2014) (quoting *Guan N. v. N.Y. City Dep't of Educ.*, 2014 WL 1275487, at *27 (S.D.N.Y. Mar. 24, 2014) (quoting *Gratz v. Bollinger*, 539 U.S. 244, 276 n. 23 (2003)))). The elements of a Section 1981 violation are that "(1) [plaintiff] is a member of a protected class; (2) [plaintiff] satisfactorily performed [her] required duties; (3) [plaintiff] suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that raise an inference of discriminatory action." *Thomas v. City of Philadelphia*, 573 F. App'x 193, 195–96 (3d Cir. 2014) (internal quotation and citation omitted).

Knox's only race-based discrimination allegations, contained or incorporated by reference in Count VIII, consist of the following: (1) the School Defendants did not explicitly reject racist comments directed toward Knox by other users of Facebook (Compl. ¶21–22); (2) Knox has been subject to a hostile work environment because of her race (*Id.* ¶128); and (3) the Board discriminated against Knox because of her race by suspending her, bringing tenure charges against her, and constructively discharging her (*Id.* ¶103). As stated in Section II.H, immediately preceding, those allegations are not factual in nature; they are conclusory. They do not set forth a claim of racial discrimination under Section 1981, any more than they did under the Equal Protection clause.

The motion to dismiss Count VIII will therefore be GRANTED.

### III.   CONCLUSION

For the foregoing reasons, the motion to dismiss the complaint is GRANTED in part and DENIED in part.

The motion to dismiss is GRANTED as to Count I (constructive discharge), the racial discrimination portion of Count VI (Equal Protection Clause), Count VIII (42 U.S.C. § 1981), and Count IX (intentional infliction of emotional distress). Because this is an initial dismissal, it is without prejudice to the filing of a properly supported motion to amend the complaint within 30 days. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

The motion to dismiss is DENIED as to Count II (Due Process), Count III (Free Speech Clause), Count IV (Free Exercise Clause), Count V (Establishment Clause), the religion portion of VI (Equal Protection Clause), Count VII (breach of contract), and Count X (New Jersey Free Exercise and Enjoyment of Religion Clauses).

26

Dated: February 23, 2015

Kevin McNulty
**United States District Judge**